909 F.2d 1482
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
R.J. BEGLEY, Plaintiff-Appellant,
v.
Lewis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 89-6241.
 United States Court of Appeals, Sixth Circuit.
 Aug. 8, 1990.
 
 Before BOYCE F. MARTIN, Jr. and RALPH B. GUY, Jr., Circuit Judges, and GILMORE, District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from the ruling of the United States District Court affirming the determination of the Secretary that Plaintiff should be denied Social Security benefits. For the reasons stated in this opinion, we affirm.
 
 
 2
 * Plaintiff, a 46 year old male, was last employed as a coal miner on March 15, 1986. He originally injured his shoulder in August of 1985, and, after a 32 day leave from work, returned to light duty. In March 1986, he claims to have reinjured his shoulder, and he has never returned to work. He also claims to have respiratory problems.
 
 
 3
 Plaintiff filed for benefits on July 3, 1987, and his application was denied initially and upon reconsideration. On September 20, 1988, a hearing was held before the ALJ, who denied benefits on October 27, 1988. The Appeals Council denied Plaintiff's request for review on February 28, 1989, and the District Court, after considering Plaintiff's objections, adopted the Magistrate's Report and Recommendation that benefits be denied.
 
 
 4
 The medical evidence shows that the day after Plaintiff injured his shoulder at work, in August of 1985, he visited the Frontier Nursing Service at Mary Breckinridge Hospital. No deficit in the upper extremity sensation, strength, or equality of strength was found. A nurse diagnosed a sprain to the insertion point of the right biceps. He was given medication and a sling, and told to apply ice and moist heat.
 
 
 5
 Several times during August and September he returned to the Hospital, but no disability was found, and conservative treatment was continued.
 
 
 6
 On September 25, 1985, Dr. David Stevens, an orthopedic surgeon, examined Plaintiff, and advised Plaintiff to return to work "as tolerated." However, six months later, Plaintiff stopped working altogether.
 
 
 7
 The next time Plaintiff received medical attention almost was two years later, on August 22, 1987, when Dr. William John, an internist, evaluated Plaintiff on behalf of the Social Security Administration. At this time, Plaintiff complained of dyspnea on mild exertion, chest pains that had been occurring for three years, and loss of motion in his right shoulder with joint tenderness. Dr. John opined that Plaintiff's breathing did not show overt evidence of respiratory insufficiency, but that his examination showed a mild chronic obstructive pulmonary disease. He further found that his chest pains were not indicative of angina pectoris, and found that an examination of Plaintiff's shoulder showed a full range of motion and no joint deformity. X-rays of the shoulder were normal.
 
 
 8
 On October 1, 1987, Dr. Stevens re-evaluated Plaintiff. At that time, Plaintiff complained of pain in the bottom of his neck radiating to his right shoulder, with numbness in some fingers, which was aggravated by activity, and partially relieved by rest. Dr. Stevens found Plaintiff had a full range of motion in his neck and shoulder, and that his upper extremities were in equal circumferences. His reflexes were equal and active, he had a normal gait, and was able to heal-and-toe walk. X-rays showed no abnormalities, and Dr. Stevens concluded that Plaintiff had a cervical syndrome that was based on a minor disorder of the cervical spine associated with a significant affective disorder. Dr. Stevens did not recommend further medical treatment, and rated Plaintiff's permanent impairment in his whole body as 5 percent.
 
 
 9
 On October 9, 1987, Plaintiff was referred by his attorney to Dr. Rolando Cheng, an orthopedic surgeon. X-rays of the shoulder were negative. Dr. Cheng diagnosed a chronic cervical sprain and shoulder strain, degenerative arthritis of the cervical spine and right shoulder, and probable nerve root impingement. Dr. Cheng found 10 percent impairment of the body as a whole.[1]
 
 II
 
 10
 After a hearing, the ALJ found that the medical evidence failed to establish any impairment, singly or in combination, which prevented Plaintiff from functioning. He found that Plaintiff had recovered sufficiently enough from his initial shoulder injury to return to work, and, despite his allegations of disability, had failed to seek any type of medical treatment since September 1985. He pointed out that the only medical attention Plaintiff had received subsequent to 1985 were two consultative exams performed in connection with his application for benefits, and a third exam performed by a physician to whom Plaintiff was referred by his attorney. Two of the three exams found no evidence of impairment to either the musculoskeletal or respiratory systems. X-rays of the shoulder and cervical spine were negative. The third report diagnosed the X-rays as showing degenerative changes in the spine and shoulder, but the ALJ found that the third physician's findings were unsupported by objective clinical evidence and inconsistent with the rest of the evidence. Therefore, the ALJ denied benefits.
 
 
 11
 The District Court's Magistrate found the medical evidence to be minimal, and noted the fact that Plaintiff sought no ongoing medical treatment for his alleged ailments. He found that his allegations of disability were unsupported by any objective evidence.
 
 
 12
 With reference to the examination of Dr. Cheng, which was the most favorable one to Plaintiff, the Magistrate found that he had examined the Plaintiff only on one occasion, and, further, performed only minimal objective tests. He also found that Dr. Cheng's X-ray findings were inconsistent with the other two consultive physicians, and stated that, even if his findings were valid, the results showed only a mild degenerative change of the cervical spine. Finally, he found that a 10 percent impairment to the body as a whole did not necessarily constitute a severe impairment, and that the ALJ's determination was supported by substantial evidence.
 
 
 13
 The District Court summarily adopted the Magistrate's Report and Recommendation.
 
 III
 
 14
 The Plaintiff, seeking reversal, alleges that the record almost exclusively shows he suffered from significant respiratory problems associated with chronic obstructive pulmonary disease, limiting his ability to perform a "wide range of work of sedentary, light, or medium work." He also claims that he has suffered a significant shoulder injury that limits his ability to perform the lightest work. He contends that either his shoulder or his respiratory problem should be sufficient to qualify him as disabled.
 
 IV
 
 15
 The standard of judicial review of the Secretary's determination is whether the record as a whole contains substantial evidence to support the Secretary's decision. 42 U.S.C. Sec. 405(g). The Secretary's finding must stand if supported by "such relevant evidence as the reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1979). It is clear to this Court that there is substantial evidence to support the Secretary's determination that Plaintiff is not entitled to benefits.
 
 
 16
 In 1985, Plaintiff injured his shoulder, but it healed sufficiently for him to return to work after a 32 day leave of absence. He claims reinjury of his shoulder to such an extent that he could no longer work after March of 1986, but this Court agrees with the ALJ and the Magistrate that there is little, if any, medical evidence to support this claim. Plaintiff never sought medical treatment after he stopped working, and the only relevant medical evidence consists of an evaluation by Doctors Stevens, John, and Cheng. The opinions of Doctors John and Stevens clearly and substantially support the Secretary's decision, and the opinion of Dr. Cheng certainly does not call for a disability determination.
 
 
 17
 This Court affirms the determination of the District Court.
 
 
 
 *
 The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The five and ten percent impairment estimates were based on the American Medical Association's (AMA) Guides to the Evaluation of Permanent Impairment. A section of these guides relates to shoulder injuries. Significantly, the guides, at the outset, distinguish between "impairment" and "disability," and make clear that, although the evaluation of impairment is a medical function, the determination of disability is an administrative function. Additionally, the AMA impairment ratings are not correlated in any way with the social security disability program. The ALJ properly considered the two opinions on percent of impairment as a pertinent piece of medical evidence and not evidence that was outcome determinative