Arnold CARSON, Plaintiff

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant

No. 02–54–B–S.

United States District Court, D. Maine.

Dec. 31, 2002.

David A. Chase, Macdonald, Chase & Szewczyk, Bangor, ME, for Arnold Carson, plaintiff.

James M. Moore, U.S. Attorney's Office, Bangor, ME, Peter S. Krynski, Social Security Disability Lit., Answer Section, Falls Church, VA, Eskunder Boyd, Assistant Regional Counsel, Office of the Chief Counsel, Boston, MA, for Social Security Administration Commissioner, defendant.

## ORDER ACCEPTING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

SINGAL, District Judge.

No objections having been filed to the Magistrate Judge's Recommended Decision filed November 20, 2002, the Recommended Decision is accepted.

Accordingly, it is *ORDERED* that the commissioner's decision is *AFFIRMED.*

## REPORT AND RECOMMENDED DECISION [1]

DAVID M. COHEN, United States Magistrate Judge.

This Social Security Disability ("SSD") appeal raises two questions: whether the commissioner erred in determining that the plaintiff did not meet a specific disability listing before the date last insured and whether the commissioner's decision at Steps 4 and 5 of the sequential evaluation process is supported by substantial evidence. I recommend that the court affirm the decision of the commissioner.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health and Human Servs.*, 690 F.2d 5, 6 (1st Cir.1982), the administrative law judge found, in relevant part, that the plaintiff had acquired sufficient quarters of coverage to remain insured only through June 30, 1989, Finding 1, Record at 17; that he had not engaged in substantial gainful activity since June 20, 1989, the date on which he alleged that he became disabled, Findings 1 & 2, *id.;* that as of the date last insured, the plaintiff suffered from degenerative disc disease of the cervical spine, a severe impairment that did not meet or equal the criteria of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), Finding 3, *id.;* that his testimony concerning his impairments and their impact on his ability to work were credible but not indicative of a totally disabling level of impairment, Finding 4, *id.;* that on the date last

<hr />

1. This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on November 19, 2002, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

insured the plaintiff lacked the residual functional capacity to perform tasks requiring lifting or carrying more than 20 pounds or pushing or pulling with the left upper extremity, Finding 5, *id.;* that the plaintiff had no significant non-exertional limitations, Finding 6, *id.;* that he was unable to perform his past relevant work as a truck driver, backhoe operator and construction laborer, Finding 7, *id.;* that given his age (46 on the date last insured), education (tenth grade) and residual functional capacity on the date last insured, the plaintiff was able to make a successful adjustment to work that existed in significant numbers in the national economy, Findings 8–10, *id.* at 17–18; and, therefore, that the plaintiff was not under a disability before the date last insured, Finding 11, *id.* at 18. The Appeals Council declined to review the decision, *id.* at 5–6, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.,* 869 F.2d 622, 623 (1st Cir.1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso–Pizarro v. Secretary of Health & Human Servs.,* 76 F.3d 15, 16 (1st Cir.1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Rodriguez v. Secretary of Health & Human Servs.,* 647 F.2d 218, 222 (1st Cir.1981).

The plaintiff's appeal invokes Steps 3, 4 and 5 of the sequential evaluation process. Statement of Specific Errors (Docket No. 3) at 1, 3. At Step 3, a claimant bears the burden of proving that his impairment or combination of impairments meets or equals an entry in the Listings. 20 C.F.R. § 404.1520(d); *Dudley v. Secretary of Health & Human Servs.,* 816 F.2d 792, 793 (1st Cir.1987). To meet a listed impairment, the claimant's medical findings (*i.e.,* symptoms, signs and laboratory findings) must match those described in the Listing for that impairment. 20 C.F.R. §§ 404.1525(d), 404.1528. To equal a Listing, the claimant's medical findings must be "at least equal in severity and duration to the listing findings." 20 C.F.R. § 404.1526(a). Determinations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1526(b).

At Step 4, the plaintiff bears the burden of proof to demonstrate inability to return to past relevant work. 20 C.F.R. § 404.1520(e); *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). At this step the commissioner must make findings concerning the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(e); Social Security Ruling 82–62, reprinted in *West's Social Security Reporting Service* Rulings 1975–1982 ("SSR 82–62"), at 813.

At Step 5, the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(f); *Yuckert,* 482 U.S. at 146 n. 5, 107 S.Ct. 2287; *Goodermote,* 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.,* 807 F.2d 292, 294 (1st Cir.1986).

### Discussion

#### A. The Listing

The plaintiff contends that he met Listing 1.05C before the date last insured.

Statement of Specific Errors at 1. He bases this argument on the reports of Dr. Fegan and Dr. Rozario. *Id.* at 1–3. The plaintiff's citation is to the version of the Listings in effect in 1989, on the date last insured. The listing for spinal stenosis and herniated nucleus pulposus, which is the impairment claimed by the plaintiff, Statement of Specific Errors at 2, then provided:

> Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
>
> 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
>
> 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

20 C.F.R. Part 404, Subpart P, App. 1, § 1.05C (1989).

A new rule was in effect at the time of the final decision, although not at the time of the administrative law judge's decision on November 20, 2001.[2] Rules and Regulations, Department of Health and Human Services, Social Security Administration, 20 C.F.R. Parts 404 and 416, 66 Fed.Reg. 58010 (November 19, 2001), at 58040. However, counsel for the defendant stipulated at oral argument that the version of the Listings in effect at the time of the date last insured would apply to this case.

■ The plaintiff contends that the reports of Dr. Fegan and Dr. Rozario meet the requirements of the prior Listing, but there is no evidence in either report of "radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss." While Dr. Rozario found "continuing" cervical radiculopathy, with no lumbar radiculopathy, in 1987, *id.* at 151, despite the lack of cervical radiculopathy found by testing in 1985, *id.* at 153, he did not record any significant motor loss with attendant weakness and deficits as a result.[3] Dr. Fegan reported in 1986 a mild spinal stenosis and "moderate compromise" of two vertebral discs determined by myelogram, with some limitation of motion in the neck and shoulder with inconclusive strength testing and a need for reconditioning of the left arm. *Id.* at 130, 132–33. At oral argument, counsel for the plaintiff listed the following pages of the record as providing evidence to meet all of the elements of the Listing: 128, 130, 141, 144, 151 and 153. However, none of these pages provides evidence of muscle spasm, significant limitation of motion in the spine, or radicular distribution of significant motor loss with both muscle weakness and sensory and reflex loss, all of which are required by the Listing. This evidence does not meet or equal the requirements of the previous Listing, a determination that must be made solely on the basis of medical evidence. 20 C.F.R. §§ 404.1525(c), 404.1526(b).

Accordingly, the plaintiff has not met his burden of proof and the commissioner did not err in finding that the plaintiff did not meet this Listing.

---

**2.** At least two courts have held that revised Listings apply to pending cases. *Fulbright v. Apfel,* 114 F.Supp.2d 465, 475–76 (W.D.N.C. 2000); *Wooten v. Apfel,* 108 F.Supp.2d 921, 924 (E.D.Tenn.2000). Two have rejected this view, holding that application of a revised Listing to an application for benefits pending before the revision takes effect would be an impermissible retroactive action without Congressional authority. *Portlock v. Barnhart,* 208 F.Supp.2d 451, 461–63 (D.Del.2002); *Kokal v. Massanari,* 163 F.Supp.2d 1122, 1134 (N.D.Cal.2001). *See also Campbell v. Barnhart,* 178 F.Supp.2d 123, 132–33 (D.Conn.2001) (declining to decide issue).

**3.** Dr. Rozario in 1985 referred only to a "difficulty in assessing the actual motor weakness." Record at 155.

## B.  Steps 4 and 5

Because the administrative law judge found at Step 4 that the plaintiff could not return to his past relevant work, Record at 17, it is not clear why he purports to challenge the commissioner's decision at that level.  He contends that the commissioner's evaluation of his residual functional capacity is incorrect, Statement of Specific Errors at 4, but that issue may be discussed in connection with a finding at Step 5, where it is certainly relevant, as well as at Step 4.  This discussion will address only the Step 5 conclusion.

The plaintiff argues that the reports of the state agency consulting physicians who reviewed his claim cannot provide evidentiary support for the residual functional capacity determination made by the administrative law judge because one of those reports does not mention the reports of Dr. Fegan and Dr. Rozario, both of whom examined the plaintiff, and neither complies with 20 C.F.R. § 404.1527(d)(2). Statement of Specific Errors at 4–8. He goes on to speculate that the consultant who stated that the reports of Dr. Fegan and Dr. Rozario "are not usable for our evaluation," Record at 162, must have rejected Dr. Rozario's conclusions because they were made in the context of a workers' compensation claim and then argues that such a reason is invalid.  Statement of Specific Errors at 6–7.  Finally, he argues, in conclusory fashion, that, in the absence of the state-agency reports, the administrative law judge must have based her conclusion on the raw medical data, which she lacked the qualifications to do.  *Id.* at 8. At oral argument counsel for the plaintiff suggested that the presence of a medi-cal advisor and a vocational expert at the hearing before the administrative law judge would have been helpful, but agreed that their presence was not legally required.

■  The plaintiff offers no authority to support his contention that the state-agency consultants who reviewed his medical records were required to comply with 20 C.F.R. § 404.1527(d)(2), and the regulation on its face makes clear that the contention is erroneous.  The portion of the regulation quoted by the plaintiff provides: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(d)(2).  The reports of state-agency consultants are neither notices of determination nor decisions issued by the defendant.[4]  In addition, it is clear that Dr. Fegan is not a treating physician; he saw the plaintiff once in order to evaluate him for an insurer.  Record at 129–33.

Furthermore, the fact that one of the state-agency consultants checked "yes" following the question "[A]re there treating/examining source conclusions about the claimant's limitations or restrictions which are significantly different from your findings?," *id.* at 162, does not necessarily mean, as the plaintiff posits, that those conclusions are "inconsistent with the light residual functional capacity found by him," Statement of Specific Errors at 6. A difference of opinion as to one limitation or restriction does not necessarily mean that there will also be a difference of opinion concerning residual functional capacity, a status that by definition includes consideration of several categories of potential limi-

---

4.  Contrary to the plaintiff's argument, the fact that one of the state-agency consultants checked a box on the form he filled out indicating that no treating or examining source statements concerning the claimant's physical capacities was in the file does not mean that he "deliberately did not consider the limitations imposed on the Plaintiff by Dr. Fegan and Dr. Rozario," Statement of Specific Errors at 5;  it can only mean that this reviewer did not see any such statements in the file.

tations or restrictions and a determination that neither the consulting state-agency physicians nor Dr. Fegan or Dr. Rozario made in any of the documents present in the file for this application.

If one of the two state-agency consultants did not see the reports of the treating and examining physicians,[5] and assuming that the second consultant wrongly rejected one or both of those reports, the inquiry does not end. At most, the weight of the consultants' reports as evidentiary support for the conclusions of the administrative law judge is lessened. The plaintiff must still identify the specific elements of the administrative law judge's conclusion concerning residual functional capacity that is not supported by substantial evidence in the record. Here, the plaintiff complains that "[t]he ALJ's residual functional capacity does not include the limitations on reaching and handling" identified by the state-agency consultants and suggests that Dr. Rozario's finding of a 33% permanent impairment of the plaintiff's spine is inconsistent with the residual functional capacity assigned by the administrative law judge. *Id.* at 5, 6–8.

■ The administrative law judge found that the plaintiff had a residual functional capacity on his date last insured for light work, with no pushing or pulling with the left upper extremity. Record at 17. In order for the plaintiff to succeed in his argument that the absence from the administrative law judge's findings of one consultant's conclusion that the plaintiff was limited in reaching in all directions and in handling (gross manipulation), which was further described by the consultant as "No constant overhead reaching left" and "no constant grasping left," *id.* at 197, and another consultant's conclusion that the plaintiff had a limitation in reaching consisting of "No constant overhead reaching left," *id.* at 159, requires remand, these limitations must be incompatible with the definition of light work. That classification is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). Limitations on constant overhead reaching with the left hand are not inconsistent with this definition. Nor is a limitation on constant grasping with the left hand, as distinct from a limitation on pushing or pulling hand controls, which the administrative law judge did apply. Record at 17.

The administrative law judge's opinion demonstrates that her conclusions were not based on her interpretation of raw medical evidence but rather on consideration of the medical reports, including the evaluations of treating and examining physicians. Record at 14–17.

---

5. At oral argument, counsel for the defendant contended that the record reveals that the two state-agency physicians did in fact review the reports of Drs. Fegan and Rozario, citing pages 162 and 201 of the record. With respect to Dr. Johnson, Record at 162, this is correct. With respect to the other state-agency physician, Dr. Hayes, *id.* at 201, it is not possible to tell whether he reviewed those reports. In any event, my analysis assumes that Dr. Hayes did not review them.

Finally, the fact that a treating physician has assigned the plaintiff a 33% permanent impairment of the spine and a 20% permanent impairment of the whole body, *id.* at 142–43, is not necessarily inconsistent with the finding that the plaintiff was capable of light work. The Social Security regulations define categories of work in terms of specific physical limitations rather than percentage impairments of body part or the whole body. The commissioner must evaluate a claimant's residual functional capacity in accordance with the terms of the regulations. A claimant must offer more than the implied assertion that a 33% impairment of the spine must be inconsistent with a capacity for light work. As the state-agency consultant noted, such an estimate of impairment is not directly "usable" for purposes of analysis under Social Security regulations.[6] *Id.* at 162. The regulations require medical evidence of specific physical limitations rather than conclusory estimates of overall impairment of a body part. *See Macia v. Bowen,* 829 F.2d 1009, 1012 (11th Cir.1987) ("permanent impairment of the shoulder does not necessarily mean a disability to do any work"); *Townsend v. Apfel,* 47 F.Supp.2d 958, 964 (N.D.Ill.1999) (physician's finding of impairment not necessarily equal to disability); *Jenny v. Califano,* 459 F.Supp. 170, 171–74 (D.Neb.1978) (physician's finding of 75% permanent impairment of right hand and wrist not incompatible with residual functional capacity for light work).

### Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be AFFIRMED.

---

**6.** The plaintiff relies on language from the foreword to the fourth edition of the *Guides to the Evaluation of Permanent Impairment* published by the American Medical Association, Statement of Specific Errors at 6–7, but as the Sixth Circuit noted in an unpublished opinion, the guides do not distinguish between impairment and disability and their impairment ratings "are not correlated in any way with the social security disability program." *Begley v. Sullivan,* 909 F.2d 1482 (table), 1990 WL 113557, at *2 n. 1 (6th Cir. Aug.8, 1990).

*NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

November 20, 2002.